19256

DERRICK, STUBBS & STITH, Appellant v. Robert E. ROGERS, Respondent.

(182 S. E. (2d) 724)

*Messrs. Clarkson* and *McCants,* of Columbia, *for Appellant,*

*Messrs. Cromer, Louthian & Meeting,* of Columbia, *for Respondent,*

*Messrs. Clarkson* and *McCants,* of Columbia, *for Appellant, in Reply,*

July 26, 1971.

Littlejohn, Justice.

The lower court sustained the demurrer of the defendant to the plaintiff's complaint and held that no cause of action was stated. The plaintiff appeals. We affirm.

The complaint, which must be accepted as true for the purpose of the demurrer, alleges that the plaintiff is a partnership engaged in the practice of public accounting, with its principal office in Columbia, South Carolina. A written partnership agreement was entered into by and between N. E. Derrick, W. J. Stubbs, Jr., H. Talcott Stith, Jr., Joseph Keels, Jr., O. Wilton McDade, Ernest S. McGrew, and the defendant, Robert E. Rogers, on November 1, 1966. The entire partnership agreement is incorporated as a part of the complaint.

The complaint further alleges that the defendant was involuntarily withdrawn from the partnership in August 1970

by the action of the other partners. It alleges that the agreement provides that a withdrawing partner shall not engage in the practice of public accounting within a certain geographical area for a period of three years from the date of withdrawal. It further alleges that the defendant has violated this provision of the contract; the prayer for relief asks the court to restrain the defendant from practicing public accounting, and enforce Section 17.02 of the agreement.

The lower court by reason of the demurrer was called upon to construe the partnership agreement. That court held that the covenant-not-to-compete provision of the agreement did not apply to one who had been involuntarily withdrawn or expulsed. The agreement provides for the manner in which the partnership will be terminated in case of involuntary withdrawal or voluntary withdrawal.

The relevant portions of the contract are as follows:

"12. VOLUNTARY WITHDRAWAL

"12.01 Any partner shall have the right to withdraw from the partnership at the end of any fiscal year provided written notice of intention to withdraw shall be delivered to the partners at the partnership office at least six (6) months before the end of the fiscal year * * * See Section 17.

"17. GENERAL GROUND-RULES FOR SETTLING A PARTNER'S CAPITAL ACCOUNT

"17.01. The partners remaining after the withdrawal, retirement or death of a partner (or partners) shall have the right to continue the practice of public accountancy under the present firm name or the name in use at the time.

"17.02. Any partner withdrawing or retiring from the partnership agrees that, if the partnership continues its practice of public accountancy, he will not engage in the practice of public accounting either, in a self-employed capacity or as an employee within a radius of sixty (60) miles of the State House in Columbia, S. C. for a period of three (3) years from the date of withdrawal.

## "13. INVOLUNTARY WITHDRAWAL

"13.01 A partner who conducts himself in such a way as to jeopardize the reputation of the partnership or otherwise becomes a detriment to the firm through his own actions, shall thereby make himself liable for expulsion from the partnership. Any partner who has reason to believe such a situation exists shall so notify the other partners and a special meeting of all the partners shall be called to consider the situation. Expulsion may be ordered only by unanimous agreement by all the other active partners.

"13.02 In the event of expulsion, a partner's interest shall be settled as provided for in Section 16 (Death of a partner)."

It is the contention of the plaintiff that the covenant-not-to-compete provision of the agreement applies to the defendant. It is the contention of the defendant that the covenant-not-to-compete provision applies to one who voluntarily withdraws but does not apply to one who is involuntarily withdrawn or expelled. The single question submitted to this court, as taken from appellant's brief, is as follows:

"Do the 'covenant not to compete' provisions, as contained in Section 17.02 of Article 17 of the Partnership Agreement of November 1, 1966, apply to a partner who has been involuntarily withdrawn from the partnership?"

A reading of the entire agreement shows that a partner may leave the partnership in four ways: voluntary withdrawal under Section 12, involuntary withdrawal under Section 13, retirement under Section 15, and death under Section 16.

It is significant that the only reference to the covenant-not-to-compete provisions of Section 17 is found in Section 12 under voluntary withdrawal. Section 13, referring to involuntary withdrawal, makes no reference to Section 17. Nowhere in Section 17 do the words "involuntary withdrawal" appear.

Section 13, although denominated "involuntary withdrawal" relates to expulsion. Expulsion is not compatible with the type of withdrawal contemplated by the wording of Section 17 because such withdrawal connotes action on the part of the partner. Expulsion, on the other hand, contemplates action taken against the will of the affected party.

The construction of the agreement sought by the plaintiff is a strained construction not warranted by the verbiage used in the contract. The holding of this court in *Oxman v. Sherman,* 239 S. C. 218, 122 S. E. (2d) 559 (1961) would dictate that an ambiguous provision (if any exists) be construed against the applicability of a covenant not to compete. In that case we said:

"A restrictive covenant not to compete ancillary to a contract of employment is generally looked upon by the courts with disfavor. It is critically examined and construed strictly against the employer."

We think that the lower court correctly held that Section 17.02 does not apply in case of expulsion. The demurrer was properly sustained.

Affirmed.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.